# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL CAMPBELL, | Case No.: 2:18-cv-00320-WGC |
| Plaintiff | **Order** |
| v. | Re: ECF Nos. 18, 19 |
| ANDREW SAUL,<br>Acting Commissioner of<br>Social Security Administration, | |
| Defendant | |

Before the court is Plaintiff's Motion for Remand/Reversal. (ECF No. 18.) The Acting Commissioner of the Social Security Administration filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF No. 19.) Plaintiff filed a reply brief. (ECF No. 20.) When Plaintiff filed his motion, Nancy A. Berryhill was the Acting Commissioner of the Social Security Administration. Andrew Saul is the new Acting Commissioner, and the caption now reflects this change.

After a thorough review, Plaintiff's motion is denied, and the Acting Commissioner's cross-motion is granted.

## I. BACKGROUND

On March 27, 2014, Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning November 1, 2012. (Administrative Record (AR) 154-155.) The application was denied initially and on reconsideration. (AR 91-94, 96-98.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 100-101.) ALJ David K. Gatto held a hearing on September 13, 2016. (AR 37-59.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On November 10, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 12-31.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-9.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) given the finding that Plaintiff requires the use of a cane for ambulation, the exertional demands of light work cannot be sustained; (2) the ALJ's determination that Plaintiff can perform a range of light work is against the substantial weight of the evidence, and instead, Plaintiff is capable of no more than sedentary work which requires a finding of disability; (3) the ALJ failed to properly identify Plaintiff's mental health issues as severe impairments; and, (4) the ALJ did not identify legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony.

The Acting Commissioner, on the other hand, argues: (1) the ALJ properly relied on VE testimony to find Plaintiff was capable of performing his past relevant work as a cashier; (2) the assigned RFC is supported by substantial evidence; (3) the ALJ's finding at step two that Plaintiff's mental impairments were not severe was valid; (4) the ALJ's assessment of Plaintiff's subjective allegations was legally sufficient.

## II. STANDARDS

**A. Disability Process**

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*,

740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids[1]. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

---

[1] The grids contain various combinations of factors that direct a finding of disabled or not disabled.

not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since the alleged onset date of November 1, 2012. (AR 16.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy, hypertension, mild degenerative disc disease of the cervical spine, Level I obesity as a secondary factor under Social Security Ruling (SSR) 02-1p, and degenerative disc disease of the lumbosacral spine. (AR 16.) As it relates to this order, the ALJ found Plaintiff's depression, affective disorder and anxiety were non-severe because the record

did not document any significant limitations associated with these conditions, citing the opinions of state disability psychological reviewers Dr. R. Torigoe, Ph.D., at the initial level, and Dr. Cory Brown, Psy.D., at the reconsideration level. (AR 17-18.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 18.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except he: can lift/carry no more than 10 pounds frequently and 20 pounds occasionally; can sit for six hours, cumulatively, in an eight-hour workday; he can stand and/or walk, with the use of a cane for ambulation, for six hours, cumulatively, in an eight-hour workday; he cannot climb ladders, ropes and scaffolds; he can occasionally climb stairs or ramps, balance, stoop, kneel, crouch, and crawl; he can tolerate occasional exposure to vibration and temperature extremes; and, he must avoid all exposure to hazards (such as heights and dangerous moving machinery). (AR 20.)

The ALJ then concluded Plaintiff was able to perform his past relevant work as a cashier as generally performed. (AR 30-31.) As a result, the ALJ found Plaintiff not disabled from November 1, 2012, through the date of the decision. (AR 31.)

**B. Light Work RFC Including Use of a Cane While Ambulating and Past Relevant Work as a Cashier**

Plaintiff argues that the ALJ found that Plaintiff requires the use of a cane for ambulation, but did not consider the effects of using a cane on the ability to perform the requirements of work at the light exertional level. Plaintiff argues that the light exertional level requires the ability to stand or walk for six of the eight hours in a workday, and many unskilled light jobs require the ability to stand and use of arms and hands to grasp and hold and turn objects, and an individual

who uses a cane for ambulation cannot perform the standing, walking and lifting required for light work.

The Acting Commissioner argues that the ALJ properly relied on the VE's testimony that a person with Plaintiff's RFC, including the use of a cane for ambulation, was capable of performing Plaintiff's past relevant work as a cashier.

The ALJ may rely on VE testimony to determine whether the claimant can perform any jobs despite his or her limitations. *See Gutierrez v. Colvin*, 844 F.3d 804, 806-07 (9th Cir. 2016) (citing *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)). In addition, the DOT, "a resource complied by the Department of Labor that details the specific requirements for different occupations, guides the analysis." *Id*. at 807. "If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Id*. (citing SSR 00-4P, 2000 WL 1898704, at * 2 (2000)).

The DOT "refers to 'occupations,' not to specific jobs[,]" and "'occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" *Id*. (quoting SSR 00-4P)). Therefore, "not all potential conflicts between an expert's job suitability recommendation and the [DOT's] listing of 'maximum requirements' for an occupation will be apparent or obvious." *Id*. at 807-08. There must be an obvious or apparent conflict between the VE testimony and the DOT which "means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id*. at 808. The court highlighted that "where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id*.

9

"The requirement for an ALJ to ask follow up questions is fact-dependent." *Id.* In making its conclusion in *Gutierrez,* the Ninth Circuit found that "[t]he ALJ was entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements[.]'" *Id*. at 809 (quoting SSR 00-4P).

Here, the ALJ presented the VE with a hypothetical individual with Plaintiff's RFC, including the use of the cane while ambulating, and the VE testified that "the cane would not have any effect on the position, the cashier position." (AR 57.) The VE testified that in making this determination, he relied on his experience as a job developer as more or less how the job is actually performed based on his experiencing placing persons with disabilities. (AR 58.)

The ALJ also noted in his decision that the VE specifically acknowledged that the DOT does not address the use of a cane in the performance of the cashier position; however, the VE testified that his testimony that Plaintiff could nevertheless perform the past relevant work as a cashier as generally performed was based on the VE's experience. (AR 31.)

Under the regulations, light work "requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). "The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, at * 6. "Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects." *Id*.

Plaintiff's argument is that a person who uses a cane for ambulation cannot perform the standing, walking and lifting to perform light work because the upper extremities are not available for activities such as lifting, carrying, pushing and pulling. (*See* ECF No. 18 at 11.)

Here, the cashier description in the DOT essentially encompasses a cashier receiving cash, making change, and issuing receipts or tickets, and in some cases, utilizing a machine such as a cash register or ticket-dispensing machine, or scanning items across an electronic scanner. The strength requirements include exerting up to 20 pounds of force occasionally (up to 1/3 of the time) and/or up to 10 pounds of force frequently (1/3 to 2/3 of the time) and/or negligible amount of force constantly (2/3 or more of the time) to move objects. According to the DOT, even though the weight lifted may be only a negligible amount, a job should be rated light work when it requires walking or standing to a significant degree, or when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls. DOT 211.462-010.

The VE indicated that his testimony that Plaintiff could perform the cashier position while using a cane to ambulate was inconsistent with the DOT, but his testimony that Plaintiff could nevertheless perform the work was based on his experience as a job developer and how the job is actually performed. (AR 58.) SSR 00-4P, like the Ninth Circuit in *Gutierrez*, points out that the DOT contains information about "occupations" which "refers to the collective description" of those jobs, and "[i]nformation about a particular job's requirements … may be available … from a VE's or VS's experience in job placement or career counseling." SSR 00-4P, 2000 WL 1898704, at * 2. A VE "may be able to provide more specific information about jobs or occupations than the DOT." *Id*. at * 3.

The court finds that the ALJ reasonably relied on the VE's testimony that in his experience the cashier position could be performed by a person who requires a cane while ambulating. This is consistent with SSR 00-4P's instruction that an ALJ may rely on VE testimony to provide more information about a position than is provided by the DOT.

Moreover, other courts have found that there is *no* conflict between an RFC for light work and the requirement that the individual use a cane to ambulate. An argument that there is a conflict relies on an assumption that the light duty jobs would require the use of both hands. The DOT descriptions for light duty jobs, including the cashier job, do not specify that the Plaintiff must use both hands to perform the tasks associated with the positions. Nor is it obvious or apparent that the cashier position would require the use of both hands such that a person restricted to using a cane to ambulate would be precluded from such work. *See Peck v. Berryhill*, No. 1:18-cv-00656-SKO, 2019 WL 1594889, at *10 (E.D. Cal. Apr. 15, 2019) (no conflict between RFC that the claimant use a cane while ambulating and light DOT jobs of cashier, parking lot attendant, and officer helper); *Ellis v. Colvin*, No. CIV 14-2417-PHX-MHB, 2016 WL 212675, at *3 (D. Ariz. Jan. 19, 2016) (no conflict between an RFC allowing for possible use of cane and DOT descriptions for parking attendant, cashier and order caller); *Dalke v. Astrue*, No. EDCV 10-01659-OP, 2011 WL 2433457, at * 3 (C.D. Cal. June 14, 2011) (no error where RFC limited claimant to use cane as needed and claimant failed to show tasks associated with electronics worker job required use of two hands). The *Peck* decision also pointed to many other district court decisions affirmed by the Ninth Circuit finding that the use of a cane did not conflict with the ability to do light work. *See Peck,* 2019 WL 1594889, at * 10 (citing *Gilder v. Colvin*, CV 14-5905-SP, 2016 WL 94228, at * 10 (C.D. Cal. Jan. 7, 2016), *aff'd in part and remanded in part sub nom on other grounds, Gilder v. Berryhill*, 703 Fed.Appx. 597 (9th Cir. 2017) ("Plaintiff's RFC requiring use of a cane for distances greater than 100 feet also does not conflict with SSR 83-10's description of light work as requiring frequent lifting and carrying of objects weighing up to ten pounds."); *Anderson v. Astrue*, No. 11cv3021-LAB (KSC), 2013 WL 1309442, at 11 (S.D. Cal. Feb. 27, 2013) ("[S]ubstantial evidence supports the ALJ's decision

that plaintiff is not disabled and is capable of light work even if plaintiff uses a cane."); *Duarte v. Comm'r of Soc. Sec.*, No. 1:15-cv-01860-SAB, 2017 WL 495645, at *10 (E.D. Cal. Feb. 6, 2017) ("The light RFC takes into account not only Plaintiff's ability to stand and walk, but also Plaintiff's abilities to lift objects…. Plaintiff is able to meet the exertional requirements of light work for standing and walking, because he is able to stand and walk for six hours even though he has to use a cane or walker.").

In sum, the court finds the ALJ did not err in adopting an RFC requiring Plaintiff to use a cane for ambulation and finding Plaintiff was able to do the light work cashier job identified by the VE.

**C. RFC For Light Work**

Plaintiff argues that the ALJ failed to fully consider the evidence as a whole in determining Plaintiff's RFC, and instead of a range of light work, Plaintiff is capable of no more than sedentary work which would result in a finding of disability under the Grids. Plaintiff cites to medical records that show a deterioration of his lumbar spine condition in his MRI of October 2014. Plaintiff states that the ALJ discussed these findings, but found that Plaintiff's engagement in work activities, yard work and caregiver activities suggested that his back pain was not as limiting as alleged. Plaintiff argues that the fact that he carried on certain daily activities does not detract from his credibility as to his overall disability. Plaintiff contends that a longitudinal view of the records confirms he is limited to sedentary work.

Plaintiff began reporting intermittent pain and tingling in his feet and toes in 2011. He was diagnosed with diabetes mellitus and associated peripheral neuropathy. (AR 264-65, 335-36.) Beginning in May of 2012, he reported pain in his lower back. At that time, his back was non-tender and he had full range of motion and muscle strength. (AR 333.) On November 15,

2012, he had full muscle strength. (AR 330.) On June 24, 2013, he reported bilateral foot pain, but on examination he was able to plantar flex and hyperextend his feet without a problem and had full muscle strength. He was assessed with neuropathic pain in both feet, and bilateral leg pain and cramps. (AR 322-23.)

A July 28, 2013, MRI of the lumbar spine showed degenerative changes that were most marked at the L4-5 and L5-S1 interspaces. There was marked right L4-5 and L5-S1 foraminal narrowing; left lateral recess narrowing at L5-S1 and bilaterally at L4-5; and, spinal canal narrowing at L4-5. (AR 276-77.) On September 16, 2013, he reported increasing back pain and neuropathic pain in his feet. It was noted that he needed pain management and an orthopedic spine evaluation. (AR 314-15.) A November 7, 2013, EMG study was normal for the bilateral extremities. (AR 274.)

On December 16, 2013, Plaintiff reported right shoulder and right hip pain. It was noted that the nerve conduction study did not reveal any evidence of peripheral neuropathy or tarsal tunnel in either foot, and there was no evidence of lumbar radiculopathy in the legs. (AR 303.) He was advised to continue his medication. (AR 304.) On December 30, 2013, he was described as walking with a steady gait, and was not using a cane to ambulate. (AR 280.)

On March 17, 2014, he reported back pain and bilateral shoulder pain, right hip pain, and paresthesia in both legs. He had full muscle strength. Labs were ordered, and he was advised to continue his medications and was referred to pain management. (AR 297-98.) On June 16, 2016, he complained of pain in the right shoulder and left knee, though he was able to lift his arm. At that time, he indicated he was working taking care of people with special needs. He was assessed with neuropathy, chronic low back pain, degenerative disc disease of the spine and multiple joint

pains. He was to continue his medications and was again referred to pain management. (AR 293-94, 297-98.)

On July 31, 2014, Plaintiff was seen for neck and bilateral arm pain, as well as low back and bilateral leg pain. His back pain radiated to his bilateral calves and feet. His neck pain radiated to his shoulders, arms and bilateral hands. He described the pain as moderate to severe and was worse with prolonged standing, walking and movement. He had some relief with exercise and heat. Plaintiff reported that his pain interfered with his sleep and routine activities. On examination he had mild discomfort, tenderness to palpation and limited range of motion. He had a steady gait and was walking without a cane or walker. He was assessed with severe lumbar and cervical radicular syndrome, severe lumbar and cervical discogenic disorder, facet syndrome, and mild myofascial pain syndrome. An MRI was ordered, and he was to continue on Norco. (AR 263-65.) Records from August 28, 2014, and September 24, 2014, have essentially the same description. (260-62, 357-58)

On October 21, 2014, Plaintiff had an MRI of the cervical and lumbar spine. The cervical spine MRI showed mild bilateral uncinate arthropathy at C3-4, which contributed to mild neural foraminal narrowing. There was no significant canal stenosis. (AR 342.) The MRI of the lumbar spine showed: (1) straightening of normal lumbar lordosis with degenerative changes most significant at L4-5 where there is marked disc desiccation and degeneration, diffuse annular bulging and loss in disc height, moderate narrowing of lateral recesses and moderate canal stenosis, mild left neural foraminal narrowing, and moderate to severe bilateral neural foraminal narrowing; (2) L5-S1 diffuse annular bulging eccentric to left with small superimposed left paracentral disc protrusion extending behind inferior endplate of L5 vertebral body, disc material

15

abuts origin of exiting left S1 nerve root without significant displacement or compression, mild canal stenosis and moderate to severe neural foraminal narrowing left greater than right. (AR 343-44.)

Plaintiff was seen on October 28, 2014, December 2, 2014, January 6, 2015, February 3, 2015, March 3, 2015, and April 2, 2015, and the notes from those appointments are almost exactly the same as the prior ones. Plaintiff was advised to continue his medications and injections were recommended, but he indicated he did not want to move forward with the injections. (AR  254-56, 287-89, 501-03, 504-06, 507-09, 510-12.) A prescription was written for a cane on April 9, 2015. (AR 390.) Notes from his visits on April 30, 2015, May 28, 2015, June 25, 2015, July 23, 2015, August 20, 2015, and September 21, 2015, are by and large the same. (AR 476, 486-88, 489-91, 492-94, 495-97, 498-500.) On April 30, 2015, and May 28, 2015, he had a normal gait and was not using a walker or cane. On June 25, 2015, July 23, 2015, and August 20, 2015, he had a normal gait but was walking with the help of a cane/walker. The notes consistently state that Plaintiff reported some help from his medications. He continued on medications, and the providers continued recommending steroid injections and physical therapy, which it appears Plaintiff did not do.

The ALJ summarized the medical record, including the October 21, 2014 lumbar spine MRI results. The ALJ found that despite these findings, the record reflects that Plaintiff engaged in work activities, yard work and caregiver activities after the alleged onset date, suggesting Plaintiff's back pain was not as limiting as alleged. The ALJ likewise noted that the pain management progress notes "reflect greatly static exams that appeared to be largely copied from one visit to the next, and adequate benefit from Norco … and Flexeril …, without reported side effects." (AR 24.) Then the ALJ discussed that primary care notes issued by Nevada Health

Center that "documented use of medication management to control the claimant's impairments, along with greatly unremarkable clinical exams, from July 2015 through June 2016." (AR 26.) There are notes that he had a steady gait and ambulated well without assistance, despite a prescription for an ambulatory device. (AR 27.)

The ALJ also considered the opinion of Disability Determination Services reviewing physician Dr. Jon Arnow, and afforded the opinions great weight because it was consistent with the "unremarkable clinical signs documented in this record, the claimant's typically adequate control of his impairments during periods of medication compliance, the absence of any surgical intervention during the relevant period, his physical activities (including caregiver activities for his mother) and his normal EMG findings and his work activities during the relevant period."

The ALJ further found that the RFC was consistent with the imaging, diagnostic, laboratory and clinical findings in conjunction with his reported work activities, engagement in yard work and his 2014 work activity at a group home as a caregiver for multiple clients. The ALJ noted that the record reflected no spinal surgery or injections, suggesting Plaintiff was not as symptomatic as alleged, despite his lumbar and cervical spine findings. In addition, objective examinations typically showed intact muscle strength and sensory functions without focal deficit despite findings of tenderness and reduced range of motion. (AR 28.)

The court finds that the ALJ did review the longitudinal medical record and that the ALJ's findings are consistent with the evidence in the record. Therefore, the ALJ did not fail to consider the evidence as a whole in determining Plaintiff's RFC.

**D. Step Two Finding that Plaintiff's Mental Impairments Were Not Severe**

Plaintiff argues that the ALJ erred when he determined that Plaintiff does not suffer from severe impairments related to his mental health because the evidence demonstrates that his

mental health issues, including depression and anxiety have a significant effect on his daily functioning.

**1. Legal Standard**

A social security claimant must have a severe impairment or combination of impairments that significantly limits the physical or mental ability to do basic work activities. *See* 20 C.F.R. § § 404.1520(c), 416,920(c). If the ALJ finds the claimant has an impairment(s) that is severe, the ALJ will proceed to step three. An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, which are defined as the abilities and aptitudes to do most jobs, such as: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R. § § 404.1521, 416.921. The claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms and laboratory findings; the claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. § § 404.1508, 416.908.

"A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its limiting effects on the individual's physical or mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself." SSR 85-28, 1985 WL 56856, at * 4 (1985). "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)

(quoting *Smolen*, 80 F.3d at 1290) (emphasis original in *Webb*); *see also* SSR 85-28, 1985 WL 56856, at * 3 (1985). The step two inquiry is "a 'de minimis screening device [used] to dispose of groundless claims,' ... and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d at 1290).

Therefore, at step two the court's inquiry is whether the "ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe [mental] impairment[.]" *Webb*, 433 F.3d at 687 (citing *Yuckert*, 841 F.2d at 306).

### 2. The ALJ's Conclusions Re: Plaintiff's Mental Impairments

The ALJ concluded that Plaintiff's depression, affective disorder and anxiety are not severe because the record does not document any significant limitations associated with them, and when considered singularly and in combination, do not cause more than minimal limitation in the ability to perform basic mental work activities. The ALJ noted that State psychological reviewer Dr. R. Torigoe, Ph.D., found no evidence of a severe mental disorder, and no evidence of any limitation in activities of daily living, social functioning or maintaining concentration, persistence or pace, or episodes of decompensation of extended duration. State psychological reviewer Dr. Copy Brown, Ph.D., affirmed the findings of Dr. Torigoe. The ALJ afforded these opinions great weight finding they were aligned with "the greatly unremarkable mental status signs documented in this record, the claimant's refusal to use an antidepressant as noted by his therapist, his subjective reports of stability with mere talk therapy, his substantially normal activities of daily living and the absence of any extended mental hospitalization[.]" Plaintiff had no limitation in activities of daily living as the record reflected active involvement in church activities, caregiver activities, yard work, moving, earning money, and performing household

chores. In his adult function report, Plaintiff indicated he watches television, maintains communication with others, shops in stores, drives a car, counts change, pays bills, does chores, prepares light meals and tends to self-care needs independently, albeit slowly.

The ALJ further indicated Plaintiff had no limitation in social functioning as he was repeatedly described as pleasant, cooperative, friendly, and able to joke around with others. He continually reported that he provides assistance to others. He interacted well with medical providers and maintained supportive relationships. He demonstrated no limitation in concentration, persistence or pace, consistent with his GED education, intact memory, normal attention, logical thought processes, average intellectual range and history of skilled, semiskilled and unskilled work. (AR 17-18.)

**3. Analysis**

The ALJ's determination that Plaintiff's mental impairments were not severe at step two is supported by substantial evidence in the record. Plaintiff's mental health records reflect that he received care for depression and anxiety in May of 2012, in June through December of 2013, in March of 2014, and then May of 2015 through June of 2016. His depression, anxiety and tearfulness were largely related to grief from multiple losses of family members and friends. The mental health records, however, consistently reflected that Plaintiff had a good support system, was goal directed and future and treatment oriented, was pleasant and cooperative with fair insight and judgment, linear and logical thought process, good to fair memory, and good coping skills. He was often described as having a good sense of humor, and laughed and joked appropriately. His providers described him as doing very well on Wellbutrin for a period of time, but he stopped when he had a change of insurance status, but when he had benefits again he

declined mental health medication. He engaged in volunteer work, including coaching youth groups and leagues, and often reported that he found his sense of purpose in helping others.

The mental health records also support the State disability reviewing psychologists' opinions that there was no evidence of a limitation in activities of daily living, social functioning, or maintaining concentration, persistence or pace.

Therefore, the ALJ did not err in concluding Plaintiff's mental health impairments were not severe at step two.

**E. Claimant Credibility**

Plaintiff argues that the ALJ did not set forth legally sufficient reasons for discounting Plaintiff's credibility. Plaintiff contends that the ALJ did mention that Plaintiff's allegations of limitation are inconsistent with his daily activities, but Plaintiff contends, as he did above, that his ability to carry on a few daily activities does not detract from his credibility as to his overall disability. The ALJ also said that since Plaintiff can earn money, it proves he is not disabled. Plaintiff acknowledges that he showed earnings after the alleged onset date: $171 in 2013, $1,298 in the second quarter of 2014, and $590 in the third quarter of 2014. Plaintiff contends these earnings were from various employment attempts which were unsuccessful and instead show his inability to sustain employment.

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citations omitted, emphasis original).

Plaintiff testified that he has pain in his back, and burning and sometimes numbness to his legs. He sometimes has issues with balance, and uses a cane to brace himself. He has had stimulation performed on his back, but no injections. Physical therapy was cancelled because of his high blood pressure. He takes a muscle relaxer and pain pill and they do not stop the pain, but ease it and provide some relief. He also has sharp pain in his neck and down his body, as well as neuropathy in his feet and toes. (AR 46-50.) He does some household chores, but it is hard for him to get them done. He estimates he could stay on his feet for 30-35 minutes before having to change positions, and he could sit for about 30-40 minutes. (AR 53-54.)

In his adult function report, Plaintiff indicated that he suffers from diabetes, arthritis and neuropathy, and has chronic pain in his back and shoulders. He tries to do daily housework and exercise to relieve his pain. He is slower getting dressed because of pain while bending down. He cooks things that do not require him to stand for very long. He does laundry and light housework. He goes outside three to four times a week. He is able to drive a car and goes out

alone. He does shopping once a week for about an hour and a half. He watches television and talks to people, including neighbors, family and friends. He goes to church on a regular basis. He is unable to lift heavy objects, and bending causes great pain. He cannot stand or walk for more than thirty minutes. He can pay attention for one to two hours. He follows spoken instructions well, and can understand written instructions, but may have to read them twice at times. He gets along well with authority figures. He worries about his health, which causes him stress. He is able to adjust to change. He uses a cane when he feels his legs or feet are giving him problems. (AR 213-219.)

The ALJ found that while his impairments may reasonably be expected to cause some symptoms, Plaintiff's allegations concerning the intensity, persistence and limiting effects of his alleged symptoms were not reasonably consistent with the objective evidence and other evidence in the record.

The court finds that the ALJ offered specific, clear and convincing reasons supported by the record for discounting Plaintiff's credibility.

The ALJ pointed out objective findings in Plaintiff's medical records that did not support Plaintiff's allegations of disabling symptoms, including: full muscle strength and no neurological or sensory deficit; a normal EMG of the bilateral lower extremities in November 2013; he consistently ambulated with a steady gait; his cervical MRI findings were mild; between January and December of 2015, he received routine, conservative care to manage his symptoms; from July 2015 through June 2016, he had medication management to control his impairments, and greatly unremarkable clinical exams. The ALJ also noted that the record reflected no history of spinal surgery or injections, suggesting Plaintiff was not as symptomatic as alleged despite his lumbar and cervical spine findings. The ALJ found that the impairments were adequately

managed with routine care was supported by the fact that he had not sought any significantly invasive treatment, such as surgical intervention or injections. The ALJ further stated that there was no evidence of focal paralysis, muscle atrophy, muscular loss or any other clinical finding that would lead the ALJ to conclude Plaintiff could not sit and stand/walk for six out of eight hours with the use of a cane for ambulation, cumulatively, in an eight-hour workday.

The ALJ also stated that the records reflect that Plaintiff's side effects from medications used are minimal to non-existent and would not interfere with the ability to perform work activities in any significant manner. Additionally, no treating or reviewing physician concluded that Plaintiff could not perform work within this RFC. Plaintiff had undergone routine treatment, and has not required extended admissions. While Plaintiff was prescribed a cane, the record demonstrates intermittent use of the cane.

Next, the ALJ found that Plaintiff's allegations of limitations and disability were inconsistent with his daily activities after the alleged onset date, including work as a caregiver, caring for an elderly family member, volunteer activities and yard work. When he presented to the emergency room for a rash in June of 2016, he reported this occurred after he had been doing yard work and recently moving. He also reported involvement in church and volunteer activities. While Plaintiff denied doing much of anything at the hearing, the ALJ pointed out that there is no clinical evidence of muscle wasting, motor loss or muscular atrophy in the record. Plaintiff is able to attend to his own personal needs, grocery shop, watch television, earn money and act as a caregiver to his elderly mother, which the ALJ found to be inconsistent with his allegations of complete and total disability.

Finally, the ALJ noted that Plaintiff provided mixed reasons for leaving past jobs that contained inconsistencies.

An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including the claimant's daily activities. 20 C.F.R. § 404.1529(c), § 416.929(c). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination" if the claimant is engaged in activities that transfer to a work setting. *See also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (citations omitted). Here, the ALJ noted not only Plaintiff's ability to engage in various household tasks, but specifically cited Plaintiff being engaged in yard work, work, volunteer and caregiving activities after the alleged onset date that go beyond simple household chores and would be transferable to a work setting. Therefore, the ALJ properly relied on Plaintiff's daily activities in finding they detracted from Plaintiff's allegations of disabling symptoms.

The ALJ also properly cited to the objective medical evidence as a basis for discrediting Plaintiff's testimony. While lack of corroboration by objective medical evidence cannot be the sole ground for rejecting subjective pain testimony, it is an appropriate reason for discrediting a claimant when there are other reasons given that are supported by the record. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Moreover, the ALJ permissibly cited Plaintiff's failure to seek more aggressive treatment, i.e., injections or surgical intervention. *See Trevizo v. Berryhill*, 871 F.3d 664, 679-80 (9th Cir. 2017); *Ghanim*, 763 F.3d at 1163.

The ALJ may also consider ordinary techniques of credibility evaluation, as the ALJ did when the inconsistencies in Plaintiff's testimony regarding leaving several jobs was noted. *Ghanim*, 763 F.3d at 1163.

Finally, Plaintiff argues that the ALJ improperly relied on his failed employment attempts to discredit his testimony, asserting that this actually demonstrates an inability to work. "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is

disabled." *Ford v. Saul,* --- F.3d ---, 2020 WL 829864, at * 9 (9th Cir. 2020). Moreover, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In sum, the ALJ articulated clear and convincing reasons supported by the record for discrediting Plaintiff's subjective symptom statements.

### IV. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion for remand/reversal is **DENIED**. The Acting Commissioner's cross-motion to affirm (ECF No. 19) is **GRANTED** and the Clerk shall enter judgment accordingly.

Dated: February 28, 2020

William G. Cobb
United States Magistrate Judge